**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v. ) | Crim. No.  18-10450-MLW |
| ) | |
| **HENRI SALVADOR GUTIERREZ** ) | |

### REPLY TO GOVERNMENT'S OPPOSITION
### TO MOTION TO DISMISS INDICTMENT
**(Leave to File Granted Dkt #178)**

The defendant, Henri Salvador Gutierrez, hereby replies to the government's opposition (hereinafter "Gov't Opp.") to his Motion to Dismiss Indictment, which he filed with this Court on April 7, 2020. The government sums up Gutierrez's arguments to dismiss as ranging from the alleged enterprise having "an insufficient effect on interstate or foreign commerce" to the alleged crimes not "compris[ing] federal offenses." Gov't Opp. at 1. Of course, a sufficient effect on interstate commerce is the foundation of federal jurisdiction and Gutierrez's claims in his motion all share the underlying argument that the government indicted him for murder, a state crime which does not fall under any exception that would allow federal government jurisdiction. *See, e.g.*, 18 U.S.C. § 2280(a)(1)(A) and (G) (allowing federal homicide charge for unlawful killing in connection with piracy). His argument is not one of "sufficiency of the evidence," Gov't Opp. at 1, but rather the appropriateness of this prosecution in a federal venue.

Similarly, Gutierrez's argument for dismissal is not that the Indictment is vague or that it is not plain or understandable. It is clearly plain and quite damming in its condemnation of La

1

Mara Salvatrucha ("MS-13"), the El Salvadoran "gang" the government alleges is the enterprise here. Gov't Opp. 2. The AUSA on this case implied during a recent hearing with this Court that MS-13 itself will be the evidentiary focus of the government's proof at trial, establishing the existence of the enterprise here through "gang experts" and other witnesses who will testify as to the criminal mission and methods of the "Hydra-like" MS-13 brand and its various "cliques" that operate throughout the United States. This testimony will apparently include evidence from other cases that have been tried in the U.S. District Court for Massachusetts.[1]

What is neither plain not apparent about this presentation is what those details have to do with Gutierrez. He stands accused of exactly one crime, the unlawful killing of Herson Rivas, an act for which the government claims it has evidence that he and other codefendants orchestrated and effectuated. As the government clarifies in its response, that act violates Massachusetts state

---

[1] While the criminal activities depicted in *United States v. Recines-Garcia, et al.*, 15-CR-10338-FDS, are real, to attribute the real crimes alleged in this case (and those actually perpetrated in other past cases) as further illustrations of directives emanating from "MS-13 Central" in El Salvador is to transform the species of mythical terrorist organizations fictionalized in American comic book lore into proof satisfying an element of a federal criminal statute. This is alchemy, not the prosecution of federal criminal offenses. *See* "Hydra" Wikipedia, at: https://en.wikipedia.org/wiki/Hydra/fictionalentities/comics/marvel, and https://en.wikipedia.org/wiki/fictionalentities/comics/ThePhantom. (last accessed on May 27, 2020).

This point was analogously made in the "§ 2255" petition of Jose Martinez Castro (Defendant 56 in 15-10338) docketed as 19-CV-11554-FDS which notes in part relevant to this Reply:

> MS-13 is a multinational group of people who share the common bond of their El Salvadoran heritage. Yes, many engage in criminal acts, with or without the support of others. By way of analogy, Roman Catholics are a multinational group of shared religious heritage, and many have committed crimes. Church leaders often appear in media articles recounting acts of pedophilia. A Catholic convicted of a drug offense, even if he obtained drugs from within a group of Catholics, should not have his sentence enhanced appropriate to a sexual preditor (sic).

Castro's § 2255 petition admits his membership in the charged conspiracy and complains of imposition of an excessive sentence by the Court. Gutierrez's case is in a different procedural and substantive posture from Castro's and is referenced only for the cited factual example provided therein.

law, specifically M.G.L. c. 265, § 1. Gov't opp. at 5. Admittedly, the question of Gutierrez's guilt is an evidentiary matter, but it is guilt of an alleged Massachusetts crime for which the evidence could show him responsible. The actions charged do not, in any tangible way, affect interstate commerce. They offend (if proven) criminal statutes whose adjudication the Constitution places primarily within the state's jurisdiction. The Indictment is not plain or concise as to how the allegation of murder against Gutierrez, assuming for the purposes of the motion to dismiss that they are true, *see United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011), constitutes a "pattern" or had even a "slight effect" on interstate commerce. *United States v. Doherty*, 867 F.2d 47, 68 (1st Cir. 1989).[2]

The government's answer to this would be that Gutierrez surely must have agreed with the other codefendants that such a crime would be a racketeering act that is connected to a racketeering enterprise, *i.e.,* the entire MS-13 organization. From the AUSA's remarks, Gutierrez assumes the government will present testimony at trial to establish what no one disputes, that the international MS-13 organization qualifies as an enterprise. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (government must prove enterprise existence as one element of RICO prosecution). However, there is nothing in the Indictment that connects this particular list of individuals with that foreign organization, other than a blanket allegation that they were "employed by or associated with MS-13." Indictment, ¶ 9. While the government may present reams of evidence that MS-13 has "a purpose of engaging in a particular course of conduct,"

---

[2] *Doherty* involved a "use of the mail to defraud" prosecution – clearly a matter of federal interest. It affected commerce as the scheme was one to obtain money falsely. It involved police officer cheating which is of a class of activities that overall can or will affect the instrumentalities of commerce.

there is nothing in the Indictment which shows Gutierrez and his codefendants in agreeing to commit the alleged criminal acts for that same purpose "beyond the isolated benefit that can redound from the commission of each criminal act." *United States vs. Connolly*, 341 F.3d 16, 25 (1st Cir. 2003) (citing *Turkette*, 452 U.S. at 583) (internal quotations omitted).[3] Evidence of the commission of the criminal act (the agreement to murder and successful completion of that act) was obtained by employment of outrageous government misconduct in unilaterally and surreptitiously transferring Mr. Gutierrez from the Essex County House of Correction at Middleton, where the Massachusetts court had ordered him detained, to the Middlesex County House of Correction at Billerica, where a cooperating agent of the government recorded an electronically transmitted dialogue about the incident with him obtained through improper inducement juxtaposed with coercive threats of harm to Gutierrez's siblings and family members. *United States v. Djokich*, 693 F. 3d 37, 43 (1st Cir. 2012); *United States v. Anzalone*, 923 F. 3d 1 (1st Cir. 2019); *United States v. Alexander*, 958 F. 3d 1, *6, *8 (1st Cir. 2020); *Pagan-Gonzalez v. Moreno*, 919 F. 3d 582, 586-588, 591-596 (1st Cir. 2019) (while deception is a well-established and acceptable law enforcement tool…the "dynamic is meaningfully different" and that "fraud, trickery and deceit in obtaining access to incriminating evidence may make otherwise lawful conduct unreasonable") (internal citations omitted); *see also Escobedo v. Illinois*, 376 U.S. 478, 480-485 (1964); *Gouled v. United States*, 255 U.S. 298 (1921), overruled on other grounds by *Warden v. Hayden*, 387 U.S. 294, 300-301 (1967); *Osborn v. United States*,

---

[3] *Connolly* makes clear that an "enterprise" is not merely a related assortment of criminal activities. Here, the alleged relationship between these defendants and the foreign enterprise is nil.

385 U.S. 323, 328-330 and n.9 (1966) (noting the "procedure of antecedent justification… central to the Fourth Amendment" requires presentation to a magistrate).[4] This will be further articulated in defendant's motion to suppress.

The significant physical distance between the foreign situs of the alleged enterprise in El Salvador and the activities the defendants are accused of conspiring to accomplish at a public playground in Lynn, Massachusetts is the least of the problems presented by this prosecution. The lack of any federal nexus between the alleged crimes here (presented as racketeering acts) and intrastate, interstate, or foreign commerce is both profound and glaring. *See United States v. Jiminez-Torres*, 435 F. 3d 3, 15 (1st Cir. 2006) (Torruella, J. concurring). What is lacking is the showing of an ongoing organization with "associates function[ing] as a continuous unit." *Connolly*, 341 F.3d at 25 (quoting *Turkette*, 452 U.S. at 583).

Gutierrez does not deny he is originally from El Salvador, the country where MS-13 originated, or that the government's evidence may show a personal affinity or identification with him for the MS-13 brand. But wearing a Boston Red Sox cap or tattooing the Patriot's logo on one's arm does not make one a member of either team or organization. The Indictment's failure to specify why Gutierrez and the others should be considered an ongoing enterprise allows for an overbroad allegation – making the entire MS-13 organization the enterprise – that exceeds federal government authority and violates due process by subjecting countless individuals to RICO prosecution because of their acquaintances, ethnicity, or appearance and apparel.

This is particularly the case given the government's stated intention to establish that the

---

[4] In this case, both the law enforcement agents and the "members of the prosecution team" asked for and apparently received permission from their Department of Justice superiors. The "permission" has not been made available to defendant.

"enterprise" in this prosecution is the foreign group, MS-13, demonized via a stream of government pronouncements and studies and anthromorphized in American media. *RJR Nabisco v. European Community*, 136 S. Ct. 2090, 2105 (2016) ("RICO enterprise must engage in, or affect in some significant way, commerce directly involving the United States — *e.g.,* commerce between the United States and a foreign country [presumably, in the case at bar, El Salvador]. Enterprises whose activities lack that anchor to U.S. commerce cannot sustain a RICO violation."). *In Re Sealed Case*, 936 F. 3d 582, 591 (D.C. Circuit 2019) (surveying decisions about the precise level of "effect" necessary in the context of commercial activity and noting that the stipulations in the parties' plea agreement placed defendant's conduct within Congressional reach).

*United States v. Nippon Paper Industries*, 109 F. 3d 1, 6 (1st Cir. 1997), recognized the solid authority for applying a domestic criminal statute to conduct occurring extraterritorially. *Pasquantonio v. United States*, 544 U.S. 349, 369 (2005), and *United States v. Valenzuela*, 849 F. 3d 477, 484-85 (1st Cir. 2017), reinforce this and recognize the inverse of this principle: *i.e.,* that domestic actions prompted by extraterritorial influences are cognizable in the U.S. courts. But more is required: commerce is necessary and invoking MS-13, with all its now well-known negative connotations, does not transform the actions and activities in this case as having an effect on commerce.

Finally, while the government may make a valid point that courts should respect grand juries and their decisions to indict, Govt. Opp. 6-7, this Court should view the government's present commitment to do the same with great skepticism and a jaundiced eye, coming as it does so soon after the U.S. Department of Justice and Attorney General Barr himself, the overseers of

the Office of the U.S. Attorney for the District of Massachusetts, announced the intended dismissal of a high-profile case in which the grand jury not only indicted the defendant on substantial evidence but on in which the defendant had (with counsel) actually pled guilty to the charges. *See United States v. Flynn*, Crim. No. 17-232-EGS (D.C. Cir. 2020).

                                                Respectfully submitted,

                                                HENRI SALVADOR GUTIERREZ,
                                                By his attorney,

                                                /s/     *George F. Gormley*
                                                George F. Gormley (BBO# 204140)
                                                George F. Gormley, P.C.
                                                160 Old Derby Street, Suite 456
                                                Hingham, MA 02043
                                                Tel: 617 268-2999/Fax: 617 268-2911
                                                Email: gfgormley@aol.com

Dated: June 2, 2020

## CERTIFICATE OF SERVICE

      I, George F. Gormley, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

                                                /s/  *George F. Gormley*
                                                George F. Gormley