UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) <br> ) <br>     v.          ) <br> ) <br> HENRI SALVADOR GUTIERREZ ) <br> ) | Crim. No.  18-10450-MLW |

**DEFENDANT'S RESPONSE TO COURT ORDER
REGARDING WHETHER HIS ALLEGED STATEMENTS TO A COOPERATING
WITNESS ARE ADMISSIBLE AT TRIAL AS STATEMENTS AGAINST INTEREST**

The defendant, Henri Salvador Gutierrez, hereby responds to this Court's January 26, 2021, order regarding whether his alleged statements to CW-13 while they were detained together at the Middlesex County House of Correction at Billerica, Massachusetts, are admissible under Federal Rule of Evidence 804(b)(3). As a preliminary matter Gutierrez repeats the assertion he made in his pending "Defendant's Motion to Suppress Coerced Statements" (Dkt. No. 486), and its accompanying "Memorandum of Law" (Dkt. No. 488): CW-13 is not a percipient witness to the accusations alleged in this Indictment. There is no evidence CW-13 was present at the murder of Herson Rivas on July 30, 2018,[1] nor any indication he knew about it other than through the MS-13 chatter channels that, as a senior member, he was clearly well-plugged into. He cannot testify to the truth of any matter at issue in this case other than that he and Gutierrez had a few conversations while he was incarcerated, some of which were

---

[1] The linchpin single incident upon which the government has built a multi-defendant RICO prosecution. Regarding this occurrence, in point of fact, there is evidence that CW-13 was *not* present. He was confined at Billerica, having "inked" his agreements with the government in 2017, awaiting his 2019 sentencing hearing.

1

surreptitiously recorded. That is what he can prove. The government could attempt to offer him as an expert witness, given his long-term personal involvement in MS-13 and his "made" status in the gang, an indication he has committed murder (for which he was rewarded by the gang but apparently will not be punished by the government). Other than that, he has no relevant testimony to offer.

The statements at issue here were allegedly made while Gutierrez was detained with this individual, a dangerous MS-13 senior member and suspected killer with a reputation for violence that posed a credible threat not only to Gutierrez (who was not free to leave the "interview") but also, because of CW-13's connections to members outside the jailhouse walls, to Gutierrez's girlfriend and his mother and brother, who all lived in the area, as well as to his older brother in Washington, D.C., who was an admitted MS-13 member but had left without the gang's permission, an offense that MS-13 has been known to punish by death.

As to the Court's inquiry, Gutierrez's alleged "statements against interest" do not satisfy either prong of the hearsay exception which might otherwise allow their admission at trial. Under the relevant portion of the rule, a statement against penal interest is admissible against an unavailable declarant if it is one that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it…had so great a tendency…to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).

The rule, specifically as it is manifested in Prong A, "is founded on the commonsense

2

notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994); *United States v. Ocasio-Ruiz*, 779 F. 3d 43, 46 (1st Cir. 2015). A statement against penal interest is admissible if it "tend[s] to subject the declarant to criminal liability to such an extent that a reasonable person would not make the statement unless it were true." *United States v. Jiménez*, 419 F.3d 34, 43 (1st Cir. 2005). All of which asks the question, is Gutierrez the "reasonable person" the rule envisions?

Assuming the reasonable person is "an ordinary person who exercises care while avoiding extremes of boldness and carefulness," as one source defines it,[2] Gutierrez arguably does not qualify. As he first noted in his "Notice of Mitigating Evidence Regarding Mental Capacity," (Dkt. No 259), a 2016 psychological evaluation raised serious questions regarding his ability to understand his situation and the juvenile court cases which were pending against him at the time, cases which were eventually dismissed because the courts determined Gutierrez was not competent to stand trial. His encounter with CW-13 was less than two years later. While he may have become more competent, however that might be measured, it is doubtful he had achieved the level of care or avoided the extremes of boldness or carelessness required under 804(b)(3)(A)[3] when he encountered CW-13 in Billerica. Hindering him further was the coercion

---

[2] *See* The Law Dictionary, available at https://thelawdictionary.org/reasonable-person/ (last accessed February 4, 2021).

[3] Fed. R. Evid. 804(b)(3)(A) provides:

> b) **The Exceptions**. The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> > (3) *Statement Against Interest*. A statement that:

3

CW-13 exerted upon him, a force of intimidation that even a reasonable person may not have been able to overcome.

Coercion is an even more relevant factor under Prong B,[4] which requires corroboration "[to] guard against the possibility of fabrication." *Ocasio-Ruiz*, 779 F. 3d at 46. Corroboration is "evidence that clearly indicates that the statements are worthy of belief, based upon the circumstances in which the statements were made." *Id*. (quoting *United States v. Barone*, 114 F.3d 1284, 1300 (1st Cir. 1997)). Specifically, that evaluation must be based "in light of all the surrounding circumstances." *Williamson*, 512 U.S. at 599; *United States v. Pelletier*, 666 F.3d 1, 8 (1st Cir 2011). The circumstances here include Gutierrez's confinement and his inability to avoid CW-13, a senior MS-13 member with a reputation for violence. These conditions were especially prevalent when CW-13 recorded their conversations, as the recordings were made inside a closed room used as a barbershop with no one else present. This isolation from other prisoners (and potential witnesses) heightened the already-palpable power differential between the younger Gutierrez and the seasoned, hardened criminal CW-13. The incentive for Gutierrez to tell CW-13 anything and everything he thought CW-13 wanted to hear was strong. Here, the authority previously cited to the Court in Gutierrez's "Memorandum in Support of his Motion to Suppress Coerced Statements" (Dkt. No. 488, at 19) is relevant:

- *Arizona v. Fulminante*, 499 U.S. 279, 287-288 (1991)

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability…

---

[4] A statement that also "is supported by corroborating circumstances that clearly indicated its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

4

- *United States v. Hughes*, 640 F.3d 428, 437-438 (1st Cir. 2011)[5]

- *Lynumm v. Illinois*, 372 U.S. 528, 534 (1963)

- *United States v. Hufstatler*, 782 F.3d 19, 21-22 (1st Cir. 2015)

The surrounding circumstances also encapsulate the nature of the alleged statements, which can best be characterized as "boasting" and "braggadocio," elements which are often present in jailhouse discussions. *See United States v. Connolly*, 504 F. 3d 206, 215 (1st Cir. 2007). Gutierrez is aware that the First Circuit has previously rejected an argument where jailhouse statements against interest were admitted under 804(b)(3), in a case involving a third-party declarant who was speaking to another inmate about the defendant's criminal exploits. *Pelletier*, 666 F.3d at 7-9. However, the appellate court discounted the argument for relying on caselaw involving jailhouse recantations. *Id*. at 8 (recantations are "generally viewed with considerable skepticism").

Gutierrez states this is a distinction without a difference, particularly in his case. He suggests *Pelletier* stands for the proposition that jailhouse boasting is limited to recanting what the declarant may have testified to in court or declared in an affidavit. However, a defendant's

---

[5] *Hughes*, 640 F.3d at 438, directs courts confronted with claims that statements made are involuntary or coerced to "sift through the totality of the circumstances, including both the nature of the police activity and the defendant's situation." Here, the circumstances surrounding the interrogation include the fact that Gutierrez had been detained (not incarcerated) on a charge of joint possession of a firearm without a license. While attempting to obtain release on bail or with acceptable conditions of release, he, a resident alien with family support and a place to reside, was shunted away from counsel and family and lodged at a different institution. Unlike the defendant in *Maryland v. Shatzer*, 559 U.S. 98, 112-114 (2010), Gutierrez was not incarcerated for a period defined by imposition of the sentence meted out by a criminal court. He was accused of only jointly possessing a firearm without the requisite license – considered a nonviolent crime under federal law, *see United States v. Doe*, 960 F.2d 221 (1st Cir. 1992) – and merely detained (without having exhausted his bail review rights pursuant to M.G.L. ch. 276, §§57-58) pending further proceedings in the Essex County Superior Court. On the record, as it existed prior to November 28, 2018 (the initial indictment date in the above-named case), his liberty was quite attainable on suitable conditions of release had his keepers not become adjunct law enforcement agents. *See United States v. Francois*, 715 F. 3d 21, 32-33 (1st Cir. 2013). (This is also footnote 15 to Dkt. No. 488, which is replicated here for the convenience of the reader).

motivation to lie to other inmates within prison walls does not change according to the current phase of his criminal case.[6] Even under the best of conditions, prison can be a brutal and violent place. *See Farmer v. Brennan*, 511 U.S. 825, 832-834 (1994). Although prison officials have an Eighth Amendment obligation to safeguard its population, *see id*., the reality is that they cannot protect their inmates at all times, and younger, smaller, less-experienced inmates will always be potential victims for prisoners such as CW-13, "who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). A scrawny detainee (such as Gutierrez) would be justifiably tempted to pad his criminal resume by prevarication in order to impress a prisoner with a violent reputation (such as CW-13), in order to avoid beatings, rape, etc.

Any statements allegedly made by Gutierrez to CW-13 were coerced and are no more admissible than confessions made to law enforcement agents who are not undercover (as CW-13 was) but who have threatened – either overtly or through clear implication – physical violence against the defendant and, in some cases, the defendant's family members and close friends. Under the totality of the circumstances as examined above, all of Gutierrez's alleged inculpatory statements to CW-13 are inadmissible hearsay under Rule 804(b)(3).[7]

---

[6] *Pelletier* is also distinguishable because the statements were made by one inmate to another outside of the defendant's presence, where no intimidation was exerted and no incentive to lie existed. The opposite is true of the present case, in which Gutierrez and CW-13 were face-to-face.

[7] Gutierrez anticipates that the government will rely on his tone of voice as much as his recorded words to prove he was relaxed around CW-13 and not intimidated by him. Gutierrez notes for the Court that the recordings were made well after his first encounter with CW-13 and do not reflect his initial trepidation at having to talk to a known senior member of MS-13 or contain the details of their earlier encounters. Gutierrez may have felt less fear by the time of the secret recordings but he never forgot who he was speaking to and what CW-13 could do to him and his loved ones if he did not placate CW-13's demands. CW-13's initial importuning of Gutierrez unleashed the devils contained within Pandora's Box and remained with him, notwithstanding CW-13's post-October 16, 2018, efforts at appearing jovial and collegial while "teeing up" the unsuspecting Gutierrez for the October 24, 2018, recording session and video walkabout.

Respectfully submitted,

/s/  *George F. Gormley*
George F. Gormley (BBO# 204140)
George F. Gormley, P.C.
160 Old Derby Street, Suite 456
Hingham, MA 02043
Tel: 617 268-2999/Fax: 617 268-2911

Dated: February 4, 2021

**CERTIFICATE OF SERVICE**

I, George F. Gormley, certify that I understand that counsel for the government will receive electronic notice of the electronic filing of this pleading.

/s/  *George F. Gormley*
George F. Gormley