UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HENRI SALVADOR GUTIERREZ,<br>ELISEO VAQUERANO CANAS,<br>JONATHAN TERCERO YANES, and<br>DJAVIER DUGGINS,<br>          Defendants. | Cr. No. 18-10450-MLW |

**GOVERNMENT'S OMNIBUS REPLY TO DEFENSE FILINGS IN RESPONSE TO COURT ORDER (DKT. NO. 566) REGARDING ADMISSIBILITY OF GUTIERREZ'S STATEMENTS UNDER FED. R. EVID. 804(b)(3)**

The government submits this omnibus reply to various defense filings in response to the court's January 26, 2021 order (Dkt. No. 566) regarding whether defendant Henri Salvador Gutierrez's statements to CW-13 are admissible pursuant to Fed. R. Evid. 804(b)(3). *See* Dkt. No. 575 (response to order by Henri Salvador Gutierrez) ("Gutierrez Filing"); Dkt. No. 580 (response to order by Djavier Duggins) ("Duggins Filing"); and Dkt. No. ___[1] (sealed response to order by Jonathan Tercero Yanes) ("Tercero Yanes Filing").

For the reasons below and those articulated previously, none of the arguments raised by the defendants require excluding the Gutierrez statements. As stated in Dkt. No. 581 (government's response to court order), Fed. R. Evid. 804(b)(3) provides an alternate way to admit Gutierrez's statements.

Accordingly, the court should DENY the pending motions in limine filed by the defendants seeking to exclude the Gutierrez statements, subject to the defendants retaining the right to renew their objections to this evidence at trial.

---

[1] Tercero Yanes sought leave to file under seal, which has been granted, and the government anticipates the Tercero Yanes Filing to be filed and docketed shortly.

1

## I. Reply to Gutierrez Filing

The Gutierrez Filing (Dkt. No. 575) is premised on little more than self-serving claims about coercion and/or his mental ability, all of which are arguments without sufficient factual support, or at least without any factual support that the court can rely on at this stage. In response to the court's query about the applicability of Rule 804(b)(3), Gutierrez raises two points: *First*, he makes vague references to a 2016 competency evaluation, arguing that Gutierrez was somehow not an "ordinary person" and "it is doubtful the had achieved the level of care or avoided the extremes of boldness or carelessness required under 804(b)(3)(A)." Dkt. No. 575 at 2-3. *Second*, he rehashes the arguments in his motion to suppress that his statements were coerced, and thus, they cannot be introduced as statements against his interest. *Id*. at 4-5. For present purposes, neither argument compels the finding that Gutierrez seeks.

As to Gutierrez's argument about his mental ability, nothing in the factual record demonstrates that Gutierrez lacked the mental ability to make self-incriminating statements and/or had some mental disease or defect that would otherwise call into question the challenged statements, let alone his guilt. The 2016 evaluation that Gutierrez often cites to was conducted as part of another case for an entirely different purpose under an entirely different set of circumstances. The clinician who performed the 2016 evaluation has not even met with Gutierrez in the last four years, let alone provided any expert opinion as to Gutierrez's state of mind at the time of the 2018 murder or at the time of his 2018 statements to CW-13.

Further, counsel for Gutierrez has stated on multiple occasions that he does not see a competency issue in this case (*i.e.*, the issue raised by the 2016 report). As for any mental disease or defect suffered by Gutierrez, counsel for Gutierrez (and counsel for all

his co-defendants) declined to even seek an evaluation of Gutierrez. Notably, Gutierrez's counsel in this case—like his immigration counsel—seems to have no issues with Gutierrez submitting affidavits and making himself available to testify under oath in federal proceedings, but when convenient, Gutierrez now claims that he may not have had the requisite mental faculties to make self-incriminating statements to a fellow gang member. Nothing in the factual record compels this finding at this stage.

Gutierrez's statements to CW-13, including his statements admitting to his membership in MS-13 and his participation in the July 2018 murder of Herson Rivas, are plainly statements against his penal interest in that they "tend to subject the declarant to criminal liability to such an extent that a reasonable person would not make the statement unless it were true." *United States v. Jimenez*, 419 F.3d 34, 43 (1st Cir. 2005).

As to Gutierrez's argument that he was coerced, the government has already responded to Gutierrez's coercion argument in detail—*see* Dkt. No. 554 (government's opposition to Gutierrez's motion to suppress)—and the government incorporates by reference all its arguments in its opposition to the motion to suppress for why the statements were not coerced. Gutierrez cannot show that he was coerced into making these statements, and the transcript, audio, and video of October 24, 2018 all negate Gutierrez's coercion arguments.

To the extent Gutierrez states that four cases cited in his motion to suppress are relevant to the Rule 804(b)(3) analysis, *see* Gutierrez Filing at 4, the government can easily distinguish those cases: In *Arizona v. Fulminante*, 499 U.S. 279 (1991), the Supreme Court affirmed after the Arizona Supreme Court found that "the confession was obtained as a direct result of extreme coercion and was tendered in the belief that the defendant's life was in jeopardy if he did not confess." *Id.* at 287. For the reasons stated

in the government's opposition to the motion to suppress, Gutierrez will be unable to show that his statements were the "direct result of extreme coercion," and the audio, video, transcript, and manner of questioning on October 24, 2018 lay waste to any claim that Gutierrez genuinely believed that his "life was in jeopardy" if he did not make the statements in question.  Among other things, Gutierrez proudly boasted about how he and his fellow MS-13 gang members brutally murdered a teenage boy by stabbing and hacking him to death.  He was laughing during parts of the discussion about the murder.  His "coercion" argument is little more than a desperate attempt to escape responsibility.

*Lynumn v. Illinois*, 372 U.S. 528 (1963), is similarly distinguishable because that case involved proof that the suspect was told by police that if she did not confess, state financial aid to her children would be stripped and her children would be taken away from her. 372 U.S. at 534.  Here, there was no such coercive pressure, let alone any such pressure from the police.  Gutierrez can be plainly heard talking in conversational tones with someone he thought was a fellow MS-13 member and someone he could trust.

*United States v. Hughes*, 640 F.3d 428 (1st Cir. 2011) provides no support to Gutierrez's argument of coercion, and indeed, aides the government's argument that there was insufficient indicia of coercion. In *Hughes*, the First Circuit affirmed the District Court's finding of voluntariness based on the cordial tone of the interview, the reasonable length of the interview, and that no inducements were offered nor any threats voiced. 640 F.3d at 438.  A similar analysis requires a finding of no coercion here.

*United States v. Hufstatler*, 782 F.3d 19 (1st Cir. 2015) also provides little support to Gutierrez's claim of coercion. In *Hufstatler*, police made subtle references to the suspects relatives, which the defendant argued was a suggestion of an implicit threat to induce a confession. The First Circuit found that—despite the references to Hufstatler's

4

family—the interview transcript was devoid of evidence that he lacked sufficient control over his own choices, and thus, he was not coerced. 782 F.3d at 26. A review of the transcript here requires a similar finding.

Finally, Gutierrez argues that he was merely engaging in "boasting" and "braggadocio," elements which are often present in jailhouse discussions. Gutierrez Filing at 5. Even if that is true, that does not provide a basis to escape from the mandate of Rule 804(b)(3). *First*, taken to its logical conclusion, Gutierrez's arguments would mean that inmates can never be deemed to have made statements against interest in jail—after all, Gutierrez claims that there is always an inherent motivation to engage in boasting in prison, which would imply that statements to fellow inmates should always be exempted from the typical hearsay exception for statements against interest. Gutierrez provides no caselaw supporting such a dramatic limitation on the rule admitting statements against interest. *Second*, this is not an issue of first impression and the First Circuit has previously approved the admission jailhouse statements as statements against interest under Rule 804(b)(3). *See United States v. Pelletier*, 666 F.3d 1, 8 (1st Cir. 2011). Contrary to Gutierrez's arguments, the First Circuit has expressly noted that the fact that a statement was made to an inmate *cuts in favor of admissibility*, not against admissibility. *See id.* ("[T]he fact that [declarant] made the statements to fellow inmate [], rather than in an attempt to curry favor with police, cuts in favor of admissibility.").

At bottom, none of Gutierrez's arguments withstand scrutiny and his arguments do not require the exclusion of the statements. Gutierrez's statements admitting to his membership and participation in the charged conspiracy, and his statements showing his personal knowledge about the inner workings of the MS-13 gang and the Sykos clique, are all statements that "tend[ ] to explore the declarant to criminal liability." Rule 803(b)(3).

## II. Reply to Duggins Filing

The Duggins Filing (Dkt. No. 580) generally consists of over two dozen pages of arguments rehashing Duggins's prior arguments that the statements by Gutierrez are "testimonial." *See generally* Duggins Filing at 1-27 (acknowledging, *inter alia*, that "this Court has already provided the parties with a wealth of caselaw, including cases within and outside this Circuit, which have all stood for its suggested proposition—that statements made by declarants in surreptitious circumstances, are considered to be non-testimonial in nature," *id.* at 5, but stating that "Duggins is not willing to concede this point and would like to take an opportunity to change the Court's mind.").

The government has previously responded to similar arguments from Duggins and incorporates them by reference herein. *See, e.g.*, Dkt. No. 364 (government's opposition to Duggins's motion in limine regarding the Gutierrez recording) at 9-13 (citing extensive caselaw for the proposition that co-conspirator statements do not violate the Confrontation Clause and Duggins invites error from the court in seeking such a ruling).

Without repeating its prior arguments on the "testimonial" point, the government highlights a few additional points in response to the Duggins Filing:

*First*, contrary to defendant's arguments, it is well established that jailhouse statements made unwittingly to an undercover informant are "clearly non-testimonial." *United States v. Veloz*, 948 F.3d 418, 430-31 (1st Cir. 2020) (citing *Davis v. Washington*, 547 U.S. 813, 825 (2006)). *Veloz* is binding First Circuit authority directly on point and *Davis* is, at the very least, carefully considered dicta by the Supreme Court. Duggins cites *Igartua v. United States*, 626 F.3d 592, 605, n.15 (1st Cir. 2010) for the legal principle that "Carefully considered Supreme Court dicta, though not binding, must be accorded great weight and should be treated as authoritative," Duggins Filing at 11, n. 10, but

6

Duggins then all but asks this Court to ignore *Veloz* and *Davis*. *See id*. The language that *Veloz* relies on from *Davis* makes unequivocally clear that "statements made to a government informant" are "clearly nontestimonial." 547 U.S. at 825 (citing *Bourjilay v. United States*, 483 U.S. 171, 181-84 (1987)). *See also Pelletier*, 666 F.3d at 9 ("Although we have not previously had occasion to apply *Davis* to *the situation presented here— statements made by one inmate to another—we have little difficulty holding that such statements are not testimonial*. Our position is consistent with that of both the Supreme Court, and other circuit courts that have held inmate conversations to be nontestimonial.") (emphasis added) (collecting cases) (citations omitted). Duggins's attempts to have this court ignore or sidestep settled law are misplaced and invite error.

*Second*, the "primary purpose" test discussed extensively by Duggins does not support his argument. *See generally* Duggins Filing at 3-7, 12-28. Duggins argues that the statements made by Gutierrez were elicited through questions that were "specifically designed to create a record of a past event with an eye for trial." *Id.* at 13. He then argues that the primary purpose test outlined in *Michigan v. Bryant*, 562 U.S. 344 (2011) directs a finding that the conversation between Gutierrez and CW-13 was therefore testimonial because CW-13's primary purpose was to create a record for trial. Duggins Filing at 4-8, 15-28. The case law that Duggins cites requires just the opposite. While *Bryant* does suggest that it is helpful to look at the words and actions of both the declarant and the questioner, this inquiry is merely an aid to determine the ultimate question of whether the *declarant* made statements with an eye toward trial, not the questioner. "To give an extreme example, if the police say to a victim, 'Tell us who did this to you so that we can arrest them and prosecute them,' the victim's response the 'Rick did it' appears purely accusatory because by virtue of the phrasing of the question, the victim necessarily has

7

prosecution in mind when she answers." *Bryant,* 562 U.S. at 367. While it is clear form that extreme example that both the questioner and the declarant have an eye toward trial, the perspective of the declarant is the only relevant inquiry. As Duggins concedes (and as Gutierrez has previously conceded), Gutierrez was not aware that he was speaking to an informant, and thus did not know whether his statements would be used for trial. Accordingly, the primary purpose test dictates that these statements are non-testimonial.

*Third*, and relatedly, a critical flaw in Duggins's analysis of the "primary purpose" test is the failure to adequately focus on the "declarant" of the "statement" in question: Gutierrez, not CW-13, was the declarant of the challenged statements. Accordingly, the critical inquiry that helps determine whether the statement by Gutierrez was testimonial and made for potential use in future litigation is an inquiry into "primary purpose" of the "declarant" Gutierrez in making the statements to CW-13. *See, e.g., United States v. Cameron,* 699 F.3d 621, 659 (1st Cir. 2012) ("The 'primary purpose' inquiry of the statement's 'testimonial' nature *focuses on the declarant's purpose in making the statement.*") (citing *Davis,* 547 U.S. at 822–23 n. 1) (emphasis added); *United States v. Volpendesto,* 746 F.3d 273, 289 (7th Cir. 2014) ("[C]ontrary to [defendant's] argument, *Bryant* mandates that we *not evaluate the purpose of [declarant's] recorded conversation from the subjective point of view of the [cooperator], who knew he was secretly collecting evidence for the government.* Instead, we evaluate their conversation objectively. And from an objective perspective, [cooperator] and [declarant's] conversation looks like a casual, confidential discussion between co-conspirators."). Viewed through that prism, Gutierrez's statements are clearly not testimonial. It defies reason to think that Gutierrez's "primary purpose" in having a conversation with CW-13—someone Gutierrez believed was a fellow MS-13 gang member and co-conspirator—was

to make testimonial statements that could be used against him in a future prosecution. Viewed from the perspective of the declarant, Gutierrez's statements are not-testimonial.

*Fourth*, the argument by Duggins that the conversation between Gutierrez and CW-13 "was an interrogation as defined by *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)," *see* Duggins Filing at 2, should be rejected. In *Innis*, the Supreme Court reversed and remanded after finding that there had been *no* interrogation. While recognizing that the definition of "interrogation" encompassed "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response," the court reemphasized that any statement given freely and voluntarily without any compelling influence is admissible, whether the statement was made in custody or not. *Id*. at 300-301. Putting aside that there was no coercive pressure here, *Innis* says nothing about informants and should not be read to hold that statements made unwittingly to police informants are the product of interrogation. A rule that questions posed by an informant to a target who does not know that he is speaking to an informant still amount to "interrogation" for *Innis* purposes would be unsound and lead to absurd results: if such interactions constituted "interrogation," *Miranda* would apply to all such instances. In situations in which someone like Gutierrez has no clue that he is speaking to a cooperating witness or confidential informant, surely the confidential informant does not need to provide *Miranda* warnings to the target before initiating a conversation.

At bottom, the arguments raised by Duggins are similar to previous arguments that the court has either rejected or has signaled that it is likely to reject at trial. Gutierrez's statements to CW-13 were not testimonial, they are likely to be admitted into evidence at trial against all defendants (as statements against interest and alternatively as co-conspirator statements), and the motion in limine filed by Duggins should be denied.

### III. Reply to Tercero Yanes's Filing

The Tercero Yanes filing raises some of the same arguments as his co-defendants, which are addressed above, but a few additional points merit a brief reply:

*First*, Tercero Yanes, like Gutierrez, makes much of the notion that Gutierrez had a reason to lie in prison because it would enhance his reputation and/or give him "street cred." Tercero Yanes's argument, if taken to its logical conclusion, would bar virtually any statement made to a co-conspirator, fellow gang member, or inmate as being admissible as a statement against interest. After all, nearly every inmate in prison and nearly every gang member on the street can presumably benefit from more "street cred" or an enhanced reputation within the prison hierarchy or within the street gang. Notwithstanding that general principle, the First Circuit (and other courts) routinely allow for the admission of statements made to inmates, gang members, or co-conspirators as statements against interest. *See, e.g.*, *Veloz*, 948 F.3d at 431 (holding that statement made to fellow inmate properly admitted as statement against interest); *Pelletier*, 666 F.3d at 8 ("[T]he fact that [declarant] made the statements to fellow inmate [ ], rather than in an attempt to curry favor with police, *cuts in favor of admissibility*.") (emphasis added); *United States v. Barone*, 114 F.3d 1284, 1295-96 (1st Cir. 1997) (holding that statement between co-conspirators properly admitted as a statement against interest); *United States v. Barrett*, 539 F.2d 244, 250-52 (1st Cir. 1976) (same); *United States v. Monserrate-Valentin*, 729 F.3d 31, 55 (1st Cir. 2013) (holding that statement made in "an unofficial, non-coercive atmosphere, between [the] defendant [and] a confidential informant, who is an acquaintance of said defendant and whom the defendant considered as an ally" was admissible as a statement against interest). The same conclusion is warranted here.

*Second*, to the extent Tercero Yanes points to various self-serving arguments by Gutierrez regarding his supposed intellectual limitations, Tercero Yanes has put forward no personal knowledge about that issue. The government has responded to Gutierrez's arguments on that issue and will respond further through a cross-examination of Gutierrez if he testifies in connection with his motion to suppress, but for his part, Tercero Yanes did not seek to have Gutierrez evaluated for any mental condition, Tercero Yanes has not and will not be providing any expert testimony on this issue, and Tercero Yanes has not and will not be providing any factual testimony on this issue either. (Gutierrez and Tercero Yanes are alleged co-conspirators, committed a murder together, and photographic evidence and witness interviews indicate they interacted with each other on numerous occasions. Tercero Yanes is free to come forward with any personal knowledge he has about Gutierrez's supposed "intellectual limitations.") For present purposes, there is no factual basis for the court to make the types of findings that Tercero Yanes is seeking.

*Third*, as to the *Bruton* analysis in the Tercero Yanes Filing, Tercero Yanes acknowledges that the key issue that requires rigorous analysis is whether the statements were testimonial. *Id*. at 8. Like Duggins, however, Tercero Yanes fails to adequately appreciate that the critical standard is whether an *objective witness* would reasonably believe that the statement would be available for use at a later trial. The inquiry is from the point of view of the *objective witness in the declarant's position*. Viewed through this prism, it becomes apparent that Gutierrez (or an objective person in Gutierrez's position) would not have reasonably believed that the statement would be available for use at a later trial. Gutierrez was having a casual conversation with someone who he believed was a fellow MS-13 gang member. Gutierrez's unequivocal admission in his filings that he did not know that CW-13 was an informant is fatal to the argument that his statements to

CW-13 were testimonial. If Gutierrez did not know that CW-13 was an informant, he could not possibly have known that what he was telling CW-13 would be available for use at trial and he was making a testimonial statement to CW-13.

*Fourth*, in making the argument that Gutierrez's statements were testimonial, Tercero Yanes also points to Gutierrez being "young, isolated, and intellectually disabled" and points to CW-13 as "an elder with a penchant for violence." The government notes that Tercero Yanes is approximately two years older than Gutierrez and Duggins is approximately ten years older than Gutierrez. Given the focus by Tercero Yanes and Duggins on Gutierrez's "intellectual limitations," and the lack of any mental health defense raised by either, Tercero Yanes and Duggins appear to be without the "intellectual limitations" they are now placing on Gutierrez. The government has compelling evidence that Tercero Yanes participated in a brutal murder and Duggins participated in a horrific attempted murder, and Gutierrez knew both of those things. Taken to its logical conclusion, Tercero Yanes's argument would suggest that all the statements that Gutierrez made to Tercero Yanes or Duggins prior to their arrests were also "testimonial" because they were statements made by a supposedly young and "intellectually disabled" individual to an "elder with a penchant for violence." Surely that cannot be the case.[2]

*Fifth*, in trying to distinguish the cases identified by the court in its recent order, Tercero Yanes fails to identify appropriate First Circuit law on co-conspirator statements. For example, in distinguishing *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013), Tercero Yanes states, "The *Clark* court also based its holding on a bright line rule that

---

[2]   As another example, Gutierrez is currently being housed at Wyatt with Lopez Flores and Vaquerano Canas. Surely the defendants are not claiming that everything Gutierrez is saying or will say to Lopez Flores or Vaquerano Canas is "testimonial" for purposes of a Confrontation Clause analysis.

statements of coconspirators are never testimonial. It relied heavily on its own circuit precedent for which there is no First Circuit corollary." Tercero Yanes Filing at 18 (citing *Clark's* citation to Tenth Circuit cases holding that statements made in furtherance of a conspiracy are categorically nontestimonial). This is incorrect because there *is* First Circuit law holding the same. *See, e.g.*, *United States v. Ciresi*, 697 F.3d 19, 31 (1st Cir. 2012) ("[W]e have already addressed this issue post-*Crawford* and concluded that coconspirator statements … are, by their nature, not testimonial."); *see also United States v. Rivera-Donate*, 682 F.3d 120 (1st Cir. 2012); *United States v. De La Paz–Rentas,* 613 F.3d 18, 28 (1st Cir. 2010); *United States v. Malpica–Garcia,* 489 F.3d 393, 397 (1st Cir. 2007); *United States v. Hansen*, 434 F.3d 92, 100 (1st Cir. 2006).

*Finally*, the government is compelled to clarify and correct a series of factual assertions in the Tercero Yanes Filing. *See* Tercero Yanes Filing at 4-5:

> The United States' own position during this prosecution corroborates key parts Gutierrez's argument: On more than one occasion, the United States has made written disclosures that credible threats have been made against the lives of these co-defendants for the *unauthorized* killing of Herson Rivas, and that killing these defendants has been 'greenlit'.

This is incorrect. The government has *never* received information or made disclosures that "credible" threats have been made against the lives of the co-defendants. The government once received some "uncorroborated" information or rumors about threats to the safety of these defendants, and the government passed those along to the defendants and the U.S. Marshals as a courtesy.[3]

---

[3] Upon receiving the Tercero Yanes filing, the government raised this issue with counsel for Tercero Yanes. Counsel confirmed that the government's prior disclosure referred to "uncorroborated" information, not "credible" threats. The government is treating this as an inadvertent misstatement, but the government nonetheless believed it was important to clarify this issue.

The Tercero Yanes Filing also states the following:

> Likewise, the United States has taken the position that Gutierrez lied in his recorded statements when he accused Rivas of cooperating with law enforcement. The government has corroborated part of Gutierrez's threat report (about being 'greenlit') and actually contends that a significant portion of his statement was a lie (that Rivas' was an informant) tailored to respond to that threat.

This is also incorrect on multiple levels.

The government has *never* taken the position that Gutierrez lied in his recorded statements. The fact that Gutierrez (and the other co-conspirators) *wrongly believed* that Rivas was cooperating *does not mean that Gutierrez was lying* when he said the gang believed Rivas was cooperating. They *did* believe he was cooperating. They were just wrong about it.

The government has *never* corroborated Gutierrez's threat report about being greenlit.[4] And the government has *never* contended that a significant portion of Gutierrez's statement was a lie. Contrary to Tercero Yanes's argument, the government has corroborated an overwhelming amount of the information in Gutierrez's statements, and the government would flatly reject any notion that a significant portion of his statement was a lie. The government has in fact produced significant evidence, including significant early *Jencks Act* statements, making clear that significant portions of Gutierrez's statements can be independently corroborated.

---

[4]   As an example to the contrary, in an abundance of caution, the government would have preferred to have had Gutierrez separated from his MS-13 co-defendants while in pretrial custody in case he was actually "green-lighted," especially given that his damning statements provide devastating evidence against his co-conspirators. Far from being concerned about reprisals from MS-13 members, Gutierrez, on his own accord and through a request to the U.S. Marshals, asked to be moved to Wyatt where some of his co-defendants are housed. Gutierrez's actions do not indicate that he fears reprisals from MS-13. *Cf.* Tercero Yanes Filing at 12 (claiming that Gutierrez feared "violent reprisal from MS-13 more than he feared the consequences of the criminal justice system.").

## **CONCLUSION**

For the reasons stated in the government's prior filings, Gutierrez's statements to CW-13 were statements against his penal interest and were co-conspirator statements in furtherance of the conspiracy. Nothing in the defense filing merits a different conclusion.

Gutierrez's statements are admissible against him as statements against interest under Fed. R. Evid. 804(b)(3) and statements of a party opponent under Fed. R. Evid. 801(d)(2)(A). Gutierrez's statements are admissible against his co-defendants under Rule 804(b)(3) and as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E).

Given the circumstances in which the statements were made, including the fact that Gutierrez did not know that CW-13 was an informant, Gutierrez's statements to CW-13 were not testimonial. Accordingly, admitting Gutierrez's statements against Gutierrez's codefendants would not violate their Confrontation Clause rights.

The pending motions in limine to exclude the Gutierrez statements from trial should be DENIED.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney
District of Massachusetts

## Certificate of Service

I hereby certify that I submitted this document for electronic filing via the ECF system, which will send an electronic copy to all counsel of record who are identified on the notice of electronic filing.

By: /s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney
District of Massachusetts